## Estate of Samuel Jones.    Appeal of Jacob Van Reed.

*Annuity—Arrears—Apportionment when binding upon annuitant.*

Where land charged with an annuity is sold at sheriff's sale in different lots to several parties, and the annuitant and the purchaser of one of the parts thereof have shown by a long course of dealing that they regarded the charge as apportioned between the several purchasers by the acre, and not according to the relative value of the parts as shown by the price paid at the sheriff's sale, the rule adopted is binding upon the administratrix of the annuitant, and she cannot recover arrears of annuities based upon the value of the lands.

*Charges upon realty—How apportioned between purchasers at sheriff's sale.*

In such case the apportionment of the principal of the legacy between the terre tenants and the remaindermen, who are not bound by the acts of the annuitant for life, will be under the long established rule that purchasers at sheriffs' sales of land, subject to a common incumbrance, must contribute to the discharge of the incumbrance in proportion to the value of their respective lots.   Carpenter v. Koons, 20 Pa. 222, followed.

Argued March 8, 1895.   Appeal, No. 341, Jan. T., 1895, by Jacob Van Reed, from decree of .O. C. of Berks Co., enforcing payment of arrears of an annuity charged on land with interest thereon.   Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Reversed.

Petition for apportionment of charge on land.

The case came up upon petition, answers and proofs.

BLAND, P. J., found the following facts:

1. That Samuel Jones died, testate, December 30, 1849, seized of a tract of land situate in Lower Heidelberg township, Berks county, containing 604 acres and 134 perches.   That he appointed his son, Thomas H. Jones, and his sons-in-law, James

Darrah and Jacob Van Reed, executors of his will, which was duly admitted to probate January 5, 1850, and letters testamentary thereon issued to the above-named executors.

2. That Samuel Jones by his said will charged the sum of $2,000 on his said real estate during the lifetime of his son, John H. Jones, and directed that the interest of the charge should be paid to his said son, John H. Jones, during his lifetime, and the principal of the charge upon the decease of John H. Jones to his two sons, Samuel B. Jones and Thomas B. Jones, or the survivor of them, and if they should die under age or without lawful issue, then over to the other children of Samuel Jones, the testator. That John H. Jones died on May 3, 1894, leaving to survive him his said son, Samuel B. Jones, and William Jones, a son of said Thomas B. Jones.

3. That in pursuance of a provision in the will of Samuel Jones, the said 604 acres and 134 perches were appraised, and the land, with the grain in the ground, the hay, straw and manure on the premises, were valued at $48,387, and at that sum the same were accepted, under the will, by Thomas H. Jones, a son of Samuel Jones, the testàtor.

4. That on May 16, 1850, the said Thomas H. Jones conveyed an undivided one half interest in said 604 acres and 134 perches to said James Darrah, and in a short time thereafter died; and letters of administration on his estate were issued to John V. R. Evans and Reese Davis.

5. That by the act of assembly of this commonwealth, approved March 9, 1851, P. L. 282, the said John V. R. Evans and Reese Davis, administrators of Thomas H. Jones, and the said James Darrah, were authorized to sell the estate of the said Thomas H. Jones and James Darrah in the said 604 acres and 134 perches, under the supervision and with the approval of the orphans' court of Berks county, subject to the said charge of $2,000; and that in pursuance of the authority so conferred and under the supervision and with the approval of said court, on Oct. 11, 1851, sold 189 acres and 129 perches of said tract of 604 acres and 134 perches to Tysher Stitzel, subject to a charge of $628, as the proportional part of said charge of $2,000, to be borne and paid by the portion so sold; and that the said 189 acres and 129 perches is now owned by Henry H. Yost, one of the petitioners, subject to a charge in the title of said $628.

6. That after the sale of said 189 acres and 129 perches to Tysher Stitzel, and charge thereon of the said $628, i. e., on Oct., 13, 1852, the residue of said tract of 604 acres and 134 perches was sold by the sheriff of Berks county, upon an execution against James Darrah, as surviving partner of the firm of Darrah & Jones, composed of said James Darrah and said Thomas H. Jones, to the said Jacob Van Reed and William Strong—Jacob Van Reed purchasing 251 acres and 22 perches at the sheriff's sale for $16,200, and William Strong 171 acres for $5,100.    That on March 31, 1856, William Strong conveyed a part of said tract of 171 acres, described as 66 acres and 35 perches, to Daniel B. Lorah, subject to $108.96 of said charge of $2,000, and the residue, described as containing 106 acres and 60 perches, to John R. Spatz, subject to $217.92 of said charge of $2,000—making a total charge on the part purchased by William Strong of $326.88.    That in fixing the sum of $326.88 as the amount chargeable upon his 171 acres, William Strong deducted the $628 previously charged on the 189 acres and 129 perches, then owned by Tysher Stitzel, from the whole charge of $2,000, and found the residue of the whole charge of $2,000, chargeable upon the land purchased by him and Jacob Van Reed, to be $1,372, which residue of $1,372 he apportioned between his land and that on Jacob Van Reed in the ratio which his purchase price of $5,100 bore to Jacob Van Reed's purchase price of $16,200.

7. That the 171 acres owned by William Strong and charged by him with $326.88 have passed, by a number of intermediate conveyances, into the ownership of divers persons.    That interest was duly paid on the charges on the William Strong land, and on the 189 acres and 129 perches sold to Tysher Stitzel, and now owned by Henry H. Yost, to John H. Jones, during his lifetime.

8. That Jacob Van Reed became the purchaser of the said tract of 251 acres and 22 perches at the said sheriff's sale Oct. 13, 1852, subject to a charge of $1,043.38 in favor of the said legatees named in the will of Samuel Jones, his proportion, as between his land and that of William Strong, of the said $2,000 charge imposed by the will of Samuel Jones.

9. That Jacob Van Reed paid to John H. Jones, annually, in the month of January of each year, during a period of forty

years, commencing in 1854 and ending in 1894, $50.00, as interest on the part of the said charge of $2,000 resting on his tract of 251 acres and 22 perches, and that he should have paid the annual interest on $1,043.38, or $62.60.

10. That the interest annually due and payable to John H. Jones on the charge of $1,043.38 resting on the 251 acres and 22 perches of land owned by Jacob Van Reed, was $62.60, and that on Jan. 1, 1894, there was charged upon said land in favor of John H. Jones forty balances of unpaid interest of $12.60 each, with the interest on the balances respectively from the time they became payable, beginning with Jan. 1, 1854,—the balances and interest amounting on Jan. 1, 1894, to $1,124.40, and that there was also charged upon said land in favor of John H. Jones at his decease May 3, 1894, the interest which accrued upon said charge between Jan. 1, 1894, and the date of his death, $21.39.

11. That there is a charge on the said land of Jacob Van Reed in favor of Samuel B. Jones and William Jones for $1,043.38, with interest thereon from the death of John H. Jones, May 3, 1894, i. e., $45.63,—making the entire charge in favor of Samuel B. Jones and William Jones $1,089.21.

Accordingly a decree was entered directing Jacob Van Reed to pay the principal of the charge, amounting to $1,043.38, with interest thereon from the death of John H. Jones, to his sons William and Samuel B., and the arrears with interest thereon to his administratrix. From this decree Jacob Van Reed appealed.

*Error assigned* was entering the above decree.

*Wm. Kerper Stevens*, of *Stevens & Stevens*, for appellant, cited: Act of March 29, 1851, P. L. 282; Carpenter v. Koons, 20 Pa. 227; Gibble's App., 134 Pa. 377; Harris v. Hay, 111 Pa. 565; Herman on Estoppel, vol. 2, sec. 1, 163; Perkins v. Gay, 3 S. & R. 327; Porter v. Commonwealth, 17 Pa. 17; Brown v. Campbell, 1 S. & R. 176; King v. Diehl, 9 S. & R. 409; Bank v. Commonwealth, 10 Pa. 453; Passenger Ry. v. City of Phila., 51 Pa. 468.

*Cyrus G. Derr*, *B. F. Dettra* with him, for appellees, cited:

Carpenter v. Koons, 20 Pa. 227 ; Fitch v. Sutton, 5 East, 230 ; Harris v. Hay, 111 Pa. 565 ; Passenger Ry. Co. v. Philadelphia, 51 Pa. 468.

OPINION BY MR. JUSTICE MITCHELL, July 18, 1895 :

The testator charged the land as a whole with the payment of $2,000.    That sum was due therefore from the 604 acres, and from each and every acre equally with the rest.    When the first sale took place in 1851 to Stitzel the parties, with the approval of the orphans' court, adopted an apportionment of the charge according to the acreage.    This undoubtedly left the remaining acres subject to $1,372 likewise charged on the whole and equally on each acre of it.    When this remainder was sold in 1852 by the sheriff, it was divided, for reasons and by authority which do not appear, and 251 acres sold to appellant at something over sixty-four and a half dollars an acre, while 171 acres were sold to Strong at a trifle less than thirty dollars an acre.    No mention was made of the mode of apportionment. Probably the sheriff or the court controlling the execution could have fixed terms of sale which would have settled this question, but they did not do so.    Nor did the parties, that is, the purchasers and John H. Jones to whom the interest on the incumbrance was payable, make any agreement on the subject though each purchaser on his own behalf came to an understanding and agreement with Jones.    Strong assumed the law to be that apportionment should be made according to the value of the parts as shown by the price paid at the sale, and he and his successors in title down to the death of Jones have been paying interest on that basis.    Appellant on the other hand claimed that the apportionment should be by the acre, and Jones acquiesced in that arrangement and received the interest on that basis for forty years until his death.    So far as the interest is concerned this is conclusive.    The interest was his, and there was no rigid rule of law as to the apportionment of it which would prevent his doing as he pleased with it.    Any apportionment therefore which he and the party to pay agreed upon became binding.    There is no evidence of any fraud or deception which would entitle his administratrix or the courts to change it.    The charge against appellant therefore of alleged arrearages of interest for forty years was erroneous and must

be struck off. Even if it had been correct to charge arrears at all, the earlier ones had long been barred, and it was not in any aspect a case for allowance of interest on interest: R. W. Co. v. Phila., 51 Pa. 465.

John H. Jones however was entitled only to the interest during his life, and at his death the principal became due to his children. They were not bound by his agreements with appellant and the other owners of the land. The question of apportionment as to the principal of the charge is therefore still open. The learned judge below held that it should be by the ratio of the values of the lots as shown by the sheriff's sale in 1852, and relied upon Carpenter v. Koons, 20 Pa. 222, as sustaining this mode.

The principal point decided in Carpenter v. Koons was that the rule that parts of land sold subject to a common incumbrance are liable in the inverse order of sale, did not apply to parts sold at sheriff's sale at different times though both subject to a paramount mortgage, but that both continued jointly liable. That was an action for contribution by the purchaser of the lot last sold, against the purchaser of the first lot, to recover the excess which he had been obliged to pay on the common incumbrance. The judge at the trial had instructed the jury that the last lot was liable for the whole. This as already said was the main point in the case, and it was held to be error, but in the opinion, BLACK, C. J. said: "Two purchasers at a sheriff's sale, subject to a mortgage which is a common incumbrance on the land of both, stand on a level. Neither of them has done or suffered anything which entitled him to a preference over the other. Equality is equity. They must pay the mortgage in proportion to the value of their respective lots." He also said that the bids at the sheriff's sale were only a circumstance which the jury should consider in arriving at the true value of the lots.

The rule of apportionment thus announced was probably the best that could be found for that case. The lots were city lots, the relative size or improvements of which do not appear. A difficulty however which the report does not clear, is suggested by the query which time is to be taken for the valuation, when the sales are with a considerable interval between. This and other questions which might arise give us some doubt whether

if the point were now to be decided as new, the relative value of the lots, particularly in cases like the present where they represent a considerable acreage, is always the proper basis of apportionment.    But as the rule announced, though somewhat obiter in Carpenter v. Koons, has stood unchallenged for forty years, we do not think it well now to depart from it, unless in exceptional cases, like Gibble's Estate, 134 Pa. 366, where the acts of the parties have made a different rule necessary to an equitable result.    If the question here were, as the question of interest was, between appellant and John H. Jones, there would be strong equity for making an exception, as in Gibble's Estate, but as the remaindermen, as Jones' children may be called, are not bound by the course of conduct before their rights accrued, the case cannot be taken out of the rule on that ground.

Decree reversed as to arrearages and interest thereon charged to appellant.    Costs to be paid by appellees.