[Filed December 6, 1886.]

## ANNIE E. RUTHERFORD v. R. H. THOMPSON
### ET AL.

EXECUTOR DE SON TORT—EXECUTORS AND ADMINISTRATORS.—The effect of Sec. 371 of the Code of Civil Procedure is, it seems, to abolish the common law rule, making one who wrongfully interfered with the estate of a deceased person an executor de son tort, and takes away the remedy which a creditor formerly had to charge the intermeddler as such. His remedy now is, to procure the appointment of an administrator, and have a proceeding instituted in the name of the latter to recover the property misappropriated.

SAME—TROVER AND CONVERSION—DEFENSE.—In an action brought by the executrix of a decedent to recover property of the estate of her testator, alleged to have been converted by the defendant, when the latter shows that the property came into his hands by direction of the plaintiff, to be sold by him, and that he did sell the same, and applied the proceeds to the payment of the debts of the deceased, it cannot be said that he has converted the property to his own use, but to the use and benefit of the decedent, or of the plaintiff, in the fiduciary character in which she sues.

MULTNOMAH COUNTY.   Defendants appeal.   Reversed, and new trial ordered.

*W. H. Adams*, for Appellants.

There are many respectable authorities holding that an executor *de son tort* may, under the general issue, show in mitigation of damages that the property of a deceased person, received by him, has been applied to the payment of debts of the deceased. (Will. on Ex. 157 ; *Tobey* v. *Miller*, 54 Me. 483 ; *Reagan* v. *Long*, 21 Ind. 264 ; *Saam* v. *Saam*, 4 Watts, [Pa.] 432; *Finnell* v. *Meaux*, 3 Bush, [Ky.] 449 ; *Glenn* v. *Smith*, 2 Gill & Johns, [Md.] 493 ; S. C. 20 Am. Dec. 460–1.)

If the appellant did the acts complained of at the direction of the respondent, he is not liable, if he paid the money in satisfaction of the debts. (*Johnson* v. *Gaither*, Harp. S. C. 6 ; *Givens* v. *Higgins*, 4 McCord, S. C., 286 ; S. C., 17 Am. Dec. 742.) If the widow directed the acts of intermeddling to be done, and they were so done at her instigation, then she committed acts which would render her, at common law, liable as executrix *de son tort*, and appellant would be her agent. The subsequent taking out of letters of administration by the widow related back to the death of her husband, legalizing all acts concerning his property in which she participated after his death. (*Magner* v. *Ryan*, 19 Mo. 196 ; *Shillaber* v. *Wyman*, 15 Mass. 322; *Alvord* v. *Marsh*, 12 Allen, 603 ; *Lawrence* v. *Wright*, 23 Pick. 128 ; *Rattoon* v. *Overacker*, 8 Johns. 126 ; *Priest* v. *Watkins*, 2 Hill, N. Y. 225 ; *Tucker* v. *Whaley*, 11 R. I. 543 ; *Olmsted* v. *Clark*, 30 Conn. 108; *Johnston* v. *Duncan*, 3 Little, [Ky.] 163; S. C., 14 Am. Dec. 54.)

*C. P. Heald*, for Respondent.

A person can do nothing as administrator before letters of administration are granted to him. (1 Williams' Executors, p. 332; 2 Blk. Comm. pp. 507, 508.) And an agreement made by a person as administrator *de son tort*, is not binding on him as rightful administrator. (*Doe* v. *Glenn*, 1 Adol. & Ell. 49 ; *Parson* v. *Mayisden*, 1 Freem. 152 ; *Morgan* v. *Thomas*, 8 Exch. 302.) The only exception to the rule is when the act is done for the benefit of the estate. (*Morgan* v. *Mayisden*, *supra* ; *Wiswell*, Adm'r, v. *Wiswell*, 29 N. W. Rep. 166.)

Lord, C. J.—This action was brought by the plaintiff, as administratrix of the estate of John Rutherford, deceased, to recover damages for the conversion of personal property belonging to the estate. The complaint, in substance, alleges that the defendant took possession of a stock of unfinished buggies and materials, the property of John Rutherford, after his death, and disposed of a part of them. The defendant Thompson, after denying the conversion, alleges in effect that after the death of Rutherford, the plaintiff, who is the widow of the decedent, delivered the property to one J. W. Swartz, as her agent, to manufacture into buggies and to sell the same for her; and that said Swartz delivered a part of said property to the defendant to be sold, and that he did sell the same and applied the money to the payment of the debts of the deceased; setting forth the amounts, and names of the parties to whom paid, &c. Issue being joined as to this, a trial was had, which resulted in a verdict for the plaintiff.

The error alleged, as disclosed by the bill of exceptions, is the refusal of the court to allow the defendant to show what he did with the money received by him as proceeds of the sale of the property of Rutherford, deceased, and in the giving this instruction : " It makes no difference what the agreement was between defendants, or any of them, and Mrs. Rutherford, widow of John Rutherford, deceased, about the property in question. Defendant R. H. Thompson is liable for the value of the property which you believe from the evidence he took possession of and sold, if any; and your verdict must be for the value of the property so converted, if any has been converted by him." And in the refusal to give certain instructions asked, which it is not necessary to consider, unless the exceptions noted are error. It is thus seen by the pleadings and the error assigned, that the defendant Thompson sought to justify his intermeddling with the property, on the ground that what he did was done by the direction of the widow, or the plaintiff, and was, in fact, her act; and that he had a right to discharge himself by proving debts paid to the amount of the goods or property received, which had belonged to the deceased. The

court evidently thought that it was immaterial whether he had done these things or not; they constitute no defense, and could not be shown in mitigation of damages.

It was formerly considered that if an individual interfered with the property of deceased, he thereby made himself an executor in his own wrong, or, as it is generally termed, an executor *de son tort.*   (2 Blk. Com. 507 ; Bacon's Abridg., Tit. Executors, &c., B. 3 ; Schouler on Executors, Sec. 184.) But this rule has been much modified, if not abolished, by the statute.   It is now enacted that "no person is liable as an executor of his own wrong, for having taken, received, or interfered with the property of the deceased ; but is responsible to the executors or administrators of such deceased person for the value of such property, so taken and received, and for all injury caused by his interference with the estate." (Code, Sec. 371.)   This provision is almost identical with the New York statute on the same subject.   The only difference—if, in effect, it may be called a difference—is, that the provision in the New York statute reads : "But shall be responsible *as a wrong-doer* to an action," &c.   As a consequence, it has been held in that state, that the office of executor *de son tort* has been abolished, and that an action cannot be maintained against any person in the character of an executor *de son tort.* (*Babcock* v. *Booth,* 2 Hill, 185 ; *Vermilya* v. *Beatty,* 6 Barb. 431 ; *Metcalf* v. *Clark,* 41 Barb. 49 ; *Field* v. *Gibson,* 20 Hun. 276.)   Our provision is equally as explicit in the first part of the section, that "no person shall be liable as an executor of his own wrong," as the New York provision ; and it is not of much consequence, as between such person and the rightful executor or administrator, that he be regarded as an executor *de son tort,* or as a wrong-doer.   It is enough that whoever intermeddles with an estate, without rightful authority so to do, is responsible to account with only the rightful executor or administrator.

But the enactment of this provision produced some more important consequences.   It took away the remedy the creditor before had to charge the intermeddler as an executor *de son tort.*

He can no longer proceed against him in that character, but must procure the appointment of an administrator, and have suit instituted in his name, to recover the property from such person who has converted it to his own use. In a word, he is now sent to the rightful representative of the estate, and cannot pursue his action against an executor *de son tort*. The rightful executor or administrator is constituted the trustee of the assets of the deceased, whose duty it is to recover and hold them in his hands as a fund to be disposed of in the best manner for the benefit of creditors. The person who intermeddles with the goods of the deceased is now only responsible to answer in an action to the rightful executor or administrator. And whether we consider the intermeddler as an executor *de son tort*, or as a wrong-doer, the liability to respond to the rightful executor or administrator is the same, and unaffected, and the law unchanged. The fiction of office may be gone, but the unauthorized act of intermeddling remains, to be dealt with judicially, according to the principles of right and justice, as applied by the law in such cases. Now, from the fact that the intermeddler with the goods of a deceased is only liable to respond to the rightful executor or administrator for the value of the goods, etc., it by no means follows, if what he did was of benefit and not injury to the estate, as the payment of funeral expenses, or debts of the deceased, or charges such as the rightful representative might have been compelled to pay, he would not be allowed to show the same in mitigation of damages in an action of trover, instituted by such executor or administrator. In thus compelling him to account with only the rightful representative, the statute does not purport or undertake to deprive him of any proper or legitimate defense. The title of executor *de son tort* may be repudiated, but the justice of the law will remain, to distinguish between acts which are beneficial and those which are injurious to an estate. As Mr. Schouler has aptly said: " Aside from all fictions of executorship *de son tort*, the rational consequence of acting without authority in an estate must be, that the acts shall be judicially treated with reference to their beneficial or injurious

character to the estate, as also to the situation and motives of the person whose conduct toward it is considered. (Schouler on Ex'rs and Adm's, Sec. 188.)

Between the acts of conversion alleged, which occurred shortly after the death of John Rutherford, and the granting of letters of administration to the plaintiff, some three or four years elapsed. The stock of unfinished buggy material constituted about all the property of the decedent, and the letters were undoubtedly taken out to hold the defendant Thompson responsible for the value to the extent to which he was concerned. But if it be true, that a part of the property, as manufactured, came into his hands by direction of the plaintiff, to be sold by him, and he did sell the same, and apply the proceeds to the payment of debts of the deceased, it cannot be said that he has converted the property to his own use, but to the use and benefit of the estate of the decedent, or of the plaintiff in the fiduciary character in which she now sues. Upon the hypothesis that what the defendant did in the matter was done at the instigation and by the direction of the widow, as claimed and argued, it is doubtful whether such facts would be sufficient to constitute the defendant an executor *de son tort*, as understood and applied at common law. To fix that character, the act of intermeddling must be such as manifests a right to control and make disposition of the effects of the deceased. Merely acting as the agent or servant of another, and doing what was done by the procurement and direction of the plaintiff, would not be enough to render a person liable as an executor *de son tort*. The law considers them as her acts, and they as her agent. (*Giles* v. *Churchill*, 5 N. H. 341; *Magner* v. *Ryan*, 19 Mo. 197; *Givens* v. *Higgins*, 4 McCord, 286.) "In this case," said Perkins, J., "if the defendant had not converted the goods to his own use, but to the use of the plaintiff, she had not been damnified in the amount of the value of such conversion." (*Reagan* v. *Long, Adm.*, 21 Ind. 264.) Nor do we think upon this assumption that it would make a person liable. To sustain the action of trover there must be a conversion. But if this be considered doubtful, the acts complained of must be

XIV. OREG.—16.

treated with reference to their beneficial or injurious character. To deprive the defendant, under the facts, of the right to give such payment in evidence in mitigation of damages, would cer tainly be rank injustice. If they are debts, which the rightful representative would be bound to pay in due course of admin- istration, they create an equity against the estate—they are not injurious, but must be considered as beneficial, making it com- petent for the defendant to give such payments in evidence which operated by way of recoupment." At common law, where the rightful executor or administrator sues the executor *de son tort,* if the action " be trover for the goods of the deceased, the defendant," said Buchanan, C. J., " cannot plead payment of debts to the value, or that he has given the goods in satis- faction of the debts. But on the general issues pleaded, he may give in evidence such payments, and they will be *recoup- ed* in damages, if they be such as the plaintiff would have been bound to make; or, in the language of some of the books, made in due course of administration." ( *Whitehall* v. *Squire,* Carth. 104; Bull. N. P. 48; 2 Black. Com. 507 ; *Mountford* v. *Gib- son,* 4 East. 441 ; *Parker* v. *Kett,* 12 Mod. 471.)

These principles of the law we believe still to be applicable in determining the liability of the defendant to the plaintiff as administratrix; that in such action it is not material whether the defendant be treated as an executor *de son tort* or a wrong- doer ; the liability in either case to account to the executor or administrator is the consequence of the same act, and is the same, and must be governed by the same principles of legal justice ; and finally, that the justice of the law remains unaf- fected, to be applied and administered accordingly as the de- fendant has injuriously or beneficially acted with reference to the estate.

As to the last objection, the court will reserve its judgment until better advised.

The judgment is reversed, and a new trial ordered.